FILED
JAMES J. VILT, JR. - CLERK
APR 15 2025
U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF KENTUCKY

Paducah Division

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO.: 5:25CR20-BJB |
| v. | |
| JONATHAN RIVAS,<br>a/k/a "Johnny"<br>a/k/a "Jonathan Rivas Fuentes"<br><br>IVO ROJNICA,<br><br>and FEDERICO PULENTA,<br>a/k/a "Fede"<br><br>*Defendants.* | 18 U.S.C. § 371<br>Conspiracy to Operate an Unlicensed Money Transmitting Business and Defraud Federally Insured Financial Institutions<br><br>18 U.S.C. § 981(a)(1)(C)<br>Criminal Forfeiture |

## INDICTMENT

### April 2025 Term – at Paducah, Kentucky

THE GRAND JURY CHARGES THAT:

### BACKGROUND

1. Argentina regularly experiences high rates of inflation and economic instability. These conditions have led to widespread capital flight as citizens move their money abroad, resulting in the Argentine government setting strict capital controls. These capital controls, however, have led to even more capital flight and more demand by Argentines for jurisdictions where they can keep their money without risk that it will depreciate in value. These pressures have given rise to "blue dollar peso exchanges," which are illicit money exchanges in Argentina engaged in unlicensed money transmission in the United States where customers can exchange Argentine pesos for more U.S. dollars than allowed under Argentine law.

### GENERAL ALLEGATIONS

2. JONATHAN RIVAS resided in Argentina and was a United States legal permanent resident. He was a partner at CONSULTANCY-1 and was a partner at ENTITY-3.

3. IVO ROJNICA resided in Argentina and Croatia. IVO ROJNICA operated money transmitting business(es) in Argentina, at times with FEDERICO PULENTA. IVO

1

ROJNICA was associated with entities including Blue Flower Investment Fund Limited, Lopud Investment Management Limited, Mudart Springs, LLC, Gorlay Holdings Limited, ENTITY-1, and ENTITY-2.

4. FEDERICO PULENTA resided in Argentina. FEDERICO PULENTA operated money transmitting business(es) in Argentina, at times with IVO ROJNICA and PERSON-1. FEDERICO PULENTA was associated with entities including ENTITY-1 and ENTITY-2.

5. PERSON-1 resided in Argentina. PERSON-1 operated money transmitting business(es) in Argentina, at times with IVO ROJNICA and FEDERICO PULENTA. PERSON-1 was associated with entities including ENTITY-1 and ENTITY-2.

6. PERSON-2 resided in Argentina. PERSON-2 operated money transmitting business(es) in Argentina, at times with PERSON-3. PERSON-2 was associated with ENTITY-4.

7. PERSON-3 resided in Argentina. PERSON-3 operated money transmitting business(es) in Argentina, at times with PERSON-2. PERSON-3 was associated with ENTITY-4.

8. PERSON-4 resided in Argentina. PERSON-4 operated money transmitting business(es) in Argentina. PERSON-4 was associated with ENTITY-5.

9. PERSON-5 resided in Argentina and was a United States legal permanent resident. PERSON-5 was a partner at CONSULTANCY-1. PERSON-5 operated ENTITY-3 with JONATHAN RIVAS and PERSON-6. PERSON-5 was a partner at ENTITY-3.

10. PERSON-6 resided in Argentina and was a United States citizen. PERSON-6 was a partner at CONSULTANCY-1. PERSON-6 operated ENTITY-3 with JONATHAN RIVAS and PERSON-5. PERSON-6 was a partner at ENTITY-3.

11. From in or about March 2012 through at least March 2020, CONSULTANCY-1 was a Buenos Aires-based financial consulting firm. During that period, JONATHAN RIVAS, PERSON-5, and PERSON-6 were partners at CONSULTANCY-1.

12. TRUST COMPANY-1 was a Murray, Kentucky-based entity. TRUST COMPANY-1 established bank accounts to hold its clients' funds and assets. JONATHAN RIVAS used TRUST COMPANY-1's services to acquire banking relationships for IVO ROJNICA, FEDERICO PULENTA, PERSON-1, and others known and unknown to the Grand Jury, and their associated entities, including ENTITY-1, ENTITY-2, and Gorlay Holdings Limited.

13. Blue Flower Investment Fund Limited was a British Virgin Islands-recognized mutual fund used to facilitate the unlicensed transmission of currency. IVO ROJNICA was involved in Blue Flower Investment Fund Limited's management. Blue Flower

Investment Fund Limited was operated with the assistance of JONATHAN RIVAS and CONSULTANCY-1.

14. Mudart Springs, LLC was a Florida-incorporated entity used to facilitate the unlicensed transmission of currency. IVO ROJNICA was involved in Mudart Springs, LLC's management. Mudart Springs, LLC was operated with the assistance of JONATHAN RIVAS and CONSULTANCY-1.

15. Lopud Investment Management Limited was a British Virgin Islands-approved investment manager used to facilitate the unlicensed transmission of currency. IVO ROJNICA was involved in Lopud Investment Management Limited's management. Lopud Investment Management Limited was operated with the assistance of JONATHAN RIVAS and CONSULTANCY-1.

16. Gorlay Holdings Limited was a British Virgin Islands-incorporated entity used to facilitate the unlicensed transmission of currency. IVO ROJNICA was involved in Gorlay Holdings Limited's management. Gorlay Holdings Limited was operated with the assistance of JONATHAN RIVAS and CONSULTANCY-1.

17. ENTITY-1 was a British Virgin Islands-recognized mutual fund used to facilitate the unlicensed transmission of currency. FEDERICO PULENTA was involved in ENTITY-1's management. ENTITY-1 was operated with the assistance of JONATHAN RIVAS and CONSULTANCY-1.

18. ENTITY-2 was British Virgin Islands-recognized investment manager used to facilitate the unlicensed transmission of currency. FEDERICO PULENTA was involved in ENTITY-2's management. ENTITY-2 was operated with the assistance of JONATHAN RIVAS and CONSULTANCY-1.

19. ENTITY-3 was a British Virgin Islands-licensed investment administrator managed by JONATHAN RIVAS, PERSON-5, PERSON-6, and other CONSULTANCY-1 employees. ENTITY-3 facilitated unlicensed transmission businesses operated by CONSULTANCY-1's clients.

20. ENTITY-4 was a British Virgin Islands-recognized mutual fund used to facilitate the unlicensed transmission of currency. PERSON-2 and PERSON-3 were involved in ENTITY-4's management. ENTITY-4 was operated with the assistance of JONATHAN RIVAS and CONSULTANCY-1.

21. ENTITY-5 was a British Virgin Islands-recognized mutual fund used to facilitate the unlicensed transmission of currency. PERSON-4 was involved in ENTITY-5's management. ENTITY-5 was operated with the assistance of JONATHAN RIVAS and CONSULTANCY-1.

22. BANK-1 was a financial institution insured by the FDIC that held TRUST COMPANY-1's bank accounts.

23. BANK-2 was a financial institution insured by the FDIC that held TRUST COMPANY-1's bank accounts.

24. BANK-3 was a financial institution insured by the FDIC that held TRUST COMPANY-1's bank accounts.

25. BANK-4 was a financial institution insured by the FDIC that held TRUST COMPANY-1's bank accounts.

26. BANK-5 was a financial institution insured by the FDIC that held TRUST COMPANY-1's bank accounts.

27. BANK-6 was a financial institution insured by the FDIC that held TRUST COMPANY-1's bank accounts.

28. BANK-7 was a financial institution insured by the FDIC.

## LICENSING REQUIREMENTS FOR ANY PERSON WHO ENGAGES IN MONEY TRANSMITTING AS A BUSINESS

29. Under federal law, Title 31, United States Code, Section 5330 required the registration as a money transmitting business by any person who engages as a business in the transmission of currency with the United States Department of the Treasury, Financial Crimes Enforcement Network.

30. Under federal law, Title 31, Code of Federal Regulations, Section 1010.100(ff)(5)(i), a "money transmitter" was a person wherever located doing business, whether or not as an organized or licensed business concern, wholly or in substantial part within the United States, in the capacity of (1) a person that provided money transmission services by accepting currency, funds, or other items of value that substitute for currency from one person and transmitting that currency, funds or other items of value that substitute for currency to another location or person by any means, including through a financial institution, an electronic funds transfer network, or an informal value transfer system; or (2) any other person engaged in the transfer of funds. A "money transmitter" was required to be licensed by both federal and state law, and failure to register under either federal or state law was a federal offense under Title 18, United States Code, Section 1960.

31. Title 18, United States Code, Section 1960(b)(1)(B) makes it a crime to fail to comply with the money transmitting business registration requirements under Title 31, United States Code, Section 5330.

32. At all times, JONATHAN RIVAS, IVO ROJNICA, and FEDERICO PULENTA formed, operated, conducted and agreed to form, operate, and conduct a series of

entities that facilitated the transfer of currency wholly or in substantial part within the United States.

33. At all times, none of the defendants, nor any entities owned by any of the defendants, were registered as required by federal law as a money transmitter.

## COUNT ONE
## (CONSPIRACY)

34. Paragraphs 1 through 33 above are re-alleged and incorporated herein by reference.

35. From at least in or about October 2015 through in or about December 2020, in the Western District of Kentucky, and elsewhere, the defendants,

**JONATHAN RIVAS, IVO ROJNICA, and FEDERICO PULENTA**

and others known and unknown to the Grand Jury, did unlawfully and knowingly combine, conspire, and agree together and with each other to knowingly (1) execute a scheme and artifice to defraud financial institutions, the deposits of which were at all relevant times insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 1344(1); and (2) conduct, control, manage, supervise, direct and own all and part of an unlicensed money transmitting business, which affected interstate and foreign commerce, in violation of Title 18, United States Code, Section 1960(b)(1)(B).

## GOAL OF THE CONSPIRACY

36. It was the goal of the conspiracy for co-conspirators, including defendants JONATHAN RIVAS, IVO ROJNICA, and FEDERICO PULENTA, to knowingly defraud financial institutions insured by the Federal Deposit Insurance Corporation ("FDIC") for the purpose of obtaining United States bank accounts and using those bank accounts to facilitate the unlicensed transmission of currency.

## MANNER AND MEANS OF THE CONSPIRACY

37. It was part of the conspiracy that the co-conspirators, including defendants JONATHAN RIVAS, IVO ROJNICA, and FEDERICO PULENTA:

   a. Used a series of shell entities, consultancies, and companies to further the unlicensed money transmitting conspiracy while deceiving bank compliance officials as to the true nature of these businesses as follows. JONATHAN RIVAS' and CONSULTANCY-1's clients included IVO ROJNICA, FEDERICO PULENTA, PERSON-1, PERSON-2, PERSON-3, and PERSON-4. Together, JONATHAN RIVAS, IVO ROJNICA, FEDERICO PULENTA, and co-conspirators used the shell entities to make it appear as though there were legitimate "investment managers" and "investment funds" on bank account

opening applications, in their interactions with bank officials, and by using securities and investment industry terminology such as "subscriptions," "redemptions," and "trade liquidations." Using these tactics, the co-conspirators obtained access to bank accounts at financial institutions including BANK-7 and used those bank accounts to facilitate the unlicensed transmission of currency;

b. Worked together to use a variety of entities to transmit funds between persons and locations, including by using ENTITY-3, which claimed to be an investment fund administrator that maintained the "investment funds" and "investment managers" for ENTITY-1, ENTITY-2, and Gorlay Holdings Limited; however, those entities were actually unlicensed money transmitting businesses. ENTITY-3 charged fees for transactions executed by CONSULTANCY-1 clients, including IVO ROJNICA, FEDERICO PULENTA, PERSON-1, PERSON-2, PERSON-3, and PERSON-4;

c. Used TRUST COMPANY-1's banking relationships to obtain access to United States bank accounts, including at BANK-1, BANK-2, BANK-3, BANK-4, BANK-5, and BANK-6, and used those bank accounts to facilitate the unlicensed transmission of currency.

## OVERT ACTS

38. During the conspiracy, co-conspirators including JONATHAN RIVAS, IVO ROJNICA, and FEDERICO PULENTA, committed the following overt acts to achieve the goals of the conspiracy:

   a. Established or caused to be established entities, including but not limited to Blue Flower Investment Fund Limited, Mudart Springs, LLC, Lopud Investment Management Limited, Gorlay Holdings Limited, ENTITY-1, ENTITY-2, ENTITY-4, and ENTITY-5, which existed to engage in the unlicensed transmission of currency;

   b. Established ENTITY-3, which was controlled by JONATHAN RIVAS, PERSON-5, and PERSON-6 in order to profit from CONSULTANCY-1's unlicensed money transmitting business clients including Blue Flower Investment Fund Limited, Mudart Springs, LLC, Lopud Investment Management Limited, Gorlay Holdings Limited, ENTITY-1, ENTITY-2, ENTITY-4, and ENTITY-5;

   c. Utilized TRUST COMPANY-1, located within the Western District of Kentucky, to submit to BANK-2, BANK-3, and other banks, false statements to justify money transfers made by the unlicensed money transmitting businesses;

   d. Submitted account opening documents to BANK-7 that purported to show that entities were either an investment fund, investment fund administrator, or investment fund advisor, when those entities were actually used to engage in the unlicensed transmission of currency;

6

e. Submitted false statements to BANK-7 to justify transactions that were in fact for the purpose of unlicensed transmission of currency;

f. Caused to be transmitted through FDIC-insured institutions the following sums of money:

   i. For Blue Flower Investment Fund Limited, from in or about 2019 to in or about 2020, approximately $81,554,898.90 was deposited into and approximately $81,025,411.43 was withdrawn from its bank account at BANK-7.

   ii. For Mudart Springs, LLC, in or about 2020, approximately $14,710,331.00 was deposited into and approximately $13,904,804.80 was withdrawn from its bank account at BANK-7.

   iii. For Lopud Investment Management Limited, in or about 2020, approximately $6,150,020.45 was deposited into and approximately $4,313,804.00 was withdrawn from its bank account at BANK-7.

   iv. For Gorlay Holdings Limited, from in or about 2017 to in or about 2018, approximately $798,300.44 was deposited into and approximately $392,160 was withdrawn from TRUST COMPANY-1's bank account(s) at BANK-2.

   v. For ENTITY-1, from in or about 2016 to in or about 2018, approximately $15,014,074.51 was deposited into and approximately $18,945,540 was withdrawn from TRUST COMPANY-1's bank account(s) at BANK-1, BANK-2, BANK-3, BANK-4, BANK-5, and BANK-6.

   vi. For ENTITY-2, in or about 2017, approximately $8,512,357 was deposited into and approximately $12,862,591 was withdrawn from TRUST COMPANY-1's bank account(s) at BANK-2.

   vii. For ENTITY-4, from in or about 2019 to in or about 2020, approximately $11,386,879.48 was deposited into and approximately $11,535,719.71 was withdrawn from its bank account at BANK-7.

   viii. For ENTITY-5, from in or about 2019 to in or about 2020, approximately $41,301,675.31 was deposited into and approximately $40,232,874.36 was withdrawn from its bank account at BANK-7.

All in violation of Title 18, United States Code, Section 371 and 2.

## FORFEITURE ALLEGATION

1. The allegations in this Indictment are realleged here for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. The United States hereby gives notice to defendants:

   **JONATHAN RIVAS, IVO ROJNICA, and FEDERICO PULENTA**

   that, upon conviction of the offense of conspiracy to knowingly execute a scheme or artifice to defraud a financial institution, the accounts of which are insured by the Federal Deposit Insurance Corporation, contrary to Title 18, United States Code, Section 1344(1), and to knowingly and intentionally conduct, control, manage, supervise, direct and own all and part of an unlicensed money transmitting business, which affected interstate and foreign commerce, contrary to Title 18, United States Code, Section 1960, in violation of Title 18, United States Code, Section 371 and 2, as charged in this Indictment, the United States will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any property constituting, and derived from, proceeds the defendant obtained directly and indirectly as the result of such offense, and all property traceable to such property.

3. If any of the above-described forfeitable property, as a result of any act or omission of JONATHAN RIVAS, IVO ROJNICA, AND FEDERICO PULENTA:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property, which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(l), to seek forfeiture of any other property of JONATHAN RIVAS, IVO ROJNICA, AND FEDERICO PULENTA up to the value of the forfeitable property described above.

(In accordance with Title 18, United States Code, Section 981(a)(1)(C).)

A TRUE BILL·

FOREPERSON

Margaret A. Moeser
CHIEF, MONEY LAUNDERING AND ASSET RECOVERY SECTION

By: _____
Mark A. Irish
Senior Trial Counsel
Yuliana Reyes
Trial Attorney
Money Laundering and Asset Recovery Section
1400 New York Avenue, NW
Washington, DC 20002
Office Number: 202-514-1263
Email Addresses:    mark.irish2@usdoj.gov
                    yuliana.reyes@usdoj.gov

9